# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs January 16, 2013

## STATE OF TENNESSEE v. CODY GARRIS

**Appeal from the Circuit Court for Giles County**
**No. 15231     Stella Hargrove, Judge**

---

**No. M2012-01263-CCA-R3-CD - Filed March 6, 2013**

---

The defendant, Cody Garris, appeals from his Giles County Circuit Court guilty-pleaded conviction of child abuse, claiming that the trial court erred by imposing a fully-incarcerative sentence. Because the record supports the sentence imposed by the trial court, we affirm.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and PAUL G. SUMMERS, SR. J., joined.

Marilyn J. Holt (on appeal) and Richard H. Dunavant (at trial), Assistant District Public Defenders, for the appellant, Cody Garris.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith Devault, Assistant Attorney General; Mike Bottoms, District Attorney General; and Beverly J. White, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On February 21, 2012, the defendant entered a "best interests" guilty plea to a single count of child abuse and neglect.[1] Following the May 11, 2012, sentencing hearing, the trial court imposed a sentence of one year and six months' incarceration. The defendant filed a timely appeal of the sentence, claiming that the trial court erred by imposing a fully-incarcerative sentence.

---

[1]In *North Carolina v. Alford*, 400 U.S. 25, 37 (1970), the United States Supreme Court held that a criminal defendant may enter a guilty plea without admitting guilt if the defendant intelligently concludes that his best interests would be served by a plea of guilty.

Initially, we observe that the defendant failed to include a transcript of the guilty plea submission hearing in the record on appeal. Often, this omission would prevent plenary review of the defendant's challenge. *See State v. Christine Caudle*, ___ S.W.3d ___, No. M2010-01172-SC-R11-CD, slip op. at 7 (Tenn. Nov. 27, 2012) (holding that "when a record does not include a transcript of the hearing on a guilty plea, the Court of Criminal Appeals should determine on a case-by-case basis whether the record is sufficient for a meaningful review"). In this case, however, the record contains adequate information for a meaningful review. The State's denial of the defendant's application for pretrial diversion, the testimony presented at the sentencing hearing, and the items exhibited to the sentencing hearing, including the presentence report, present a thorough overview of the case.

The following recitation of facts comes from the State's denial of the defendant's application for pretrial diversion:

On July 19, 2010, Cody Garris, the defendant, was left alone with his two and one half month []old twins . . . DOB 4-2-10. While attending to the two children, he slapped [J.G.] across the face, leaving extensive swelling and bruising over the entire left side of her face, parallel linear bruises on her left cheek, bruising on the nasal bridge and to the right side of her forehead and right eyelid. She additionally had significant subconjunctival hemorrhaging in both eyes. This report came from an examination at Vanderbilt Children's Hospital. The [d]efendant originally reported a much different story. He reported that he had dropped the child onto a carpeted floor while feeding her. According to the [d]efendant's written statement, he was caring for the two children between the hours of 11:00 a.m. and 12:00 noon. He had fed the two children and was burping [J.G.] when she kicked off of him and fell to the floor. He called his wife, Amanda, who was grocery shopping, to tell her what had happened. He then put ice on the area to reduce the swelling. His wife came home around 2:00 p.m. and recommended he take [J.G.] to the [h]ospital. According to the Report to Department of Children's Services by the Hillside Hospital Emergency Room, the [d]efendant arrived with the child at 2:50 p.m., some three hours after the incident. The defendant's explanation was that the child fell off the couch and hit her head. He then said that he was holding the child and burping her. When he reached for something, she kicked him, causing him to lose his grip and she fell. At this time she had

bruising on the left side of her face, forehead, and across her nose, as well as bleeding in both eyes. The Emergency personnel at Hillside Hospital stated that the [d]efendant's explanation of what happened does not match the injuries.

At the sentencing hearing, Doctor Lisa Piercey, a "child abuse pediatrician" and medical director of the Madison County Child Advocacy Center, testified that she reviewed the victim's medical records. According to Doctor Piercey, the defendant brought the victim to the Hillside Hospital Emergency Room with "significant facial trauma" that Doctor Piercey described as "parallel linear" bruising "from the top of her head, down through her cheek, across the bridge of her nose, and over on the right side of her temple." She said that the victim "also had blood in both of her eyes" as a result of "subconjunctival hemorrhaging, which is bleeding into the whites of the eyes." The hemorrhaging, she said, was "resultant from direct facial trauma, being hit in the eye, having significant blows to the head." Doctor Piercey testified that the bruises on the victim's face were "very classic for slap marks."

According to Doctor Piercey, who did not treat the victim, the defendant told hospital personnel that the victim had fallen from his lap onto a carpeted floor. Doctor Piercey said that the victim's "injuries didn't come from a fall on the floor." She testified that the victim was transferred to Vanderbilt Children's Hospital for further evaluation and released on the following day.

During cross-examination, Doctor Piercey acknowledged that the bruising to the victim's face was not permanent, but she explained that "[t]he bleeding into the eyes could have long-term vision consequences. That is not something we are going to know for a while." She said that the bruises to the victim's face indicated "that there were at least two blows to the head, if not more."

Michael Rex Chapman, chief investigator for the Giles County Sheriff's Department, testified that he interviewed the defendant twice in the days after the victim was taken to the hospital. The State played for the trial court the audio recordings of Investigator Chapman's interviews with the defendant, but those recordings were not made a part of the record on appeal.

Lindsay Hill testified that she prepared the presentence report in this case. She said that she met with the defendant on four occasions while preparing the report. Ms. Hill testified that according to information available to her, the defendant received a number of traffic citations, including two for driving on a suspended license, from the Pulaski Police Department on August 27, 2011, and from the Tennessee Highway Patrol on August 5, 2011.

On September 8, 2011, the defendant was charged by the Giles County Sheriff's Department with driving on a suspended license, simple possession of marijuana, possession of drug paraphernalia, and violation of the light law. All of these charges arose while the defendant was on bond for the charge of child abuse. The defendant later pleaded guilty to all of the offenses.

Ms. Hill testified that the defendant told her that he was attending Martin Methodist College and that he provided her with a transcript of his attendance that showed grades of C, D, and F and a cumulative grade point average of 1.05. The defendant told Ms. Hill that he was living on campus.

The defendant, a veteran, told Ms. Hill that his health was "good" but that he had been admitted to Middle Tennessee Mental Health Center and the Veteran's Administration Hospital in Murfreesboro, following a suicide attempt. She testified that the defendant said that he had not been officially diagnosed as suffering from post-traumatic stress disorder because he did not keep scheduled appointments. The defendant admitted to Ms. Hill the occasional use of both alcohol and marijuana, but he claimed that he had not used marijuana since being placed on probation for his misdemeanor offenses.

The defendant reported a sporadic work history following his discharge from the army in 2009 and stated that he did not intend to look for work "until everything was over." He told Ms. Hill that his primary focus was his education.

During cross-examination, Ms. Hill confirmed that the defendant provided documentation of his military service and honorable discharge.

Casey Capps, an employee of Martin Methodist College, provided documentation of the defendant's college attendance. According to school records, the defendant was residing on campus at the time of the sentencing hearing. The defendant's cumulative grade point average was 1.57 on a four-point scale.

Patricia McNair, an employee of Providence Community Corrections, testified that she supervised the defendant's misdemeanor probation. She said that the defendant had reported as required, had paid all of the fines and costs on two of his cases, and had passed all of the drug screens. The defendant told Ms. McNair that he obtained money to pay the fines and costs from the Veteran's Administration. He did not tell her that he lived in the dormitory but instead told her that he lived with his mother. The telephone number that the defendant provided to Ms. McNair did not match the one he provided to Ms. Hill.

The defendant testified that at the time of the sentencing hearing he lived in

Upperman Hall on the campus of Martin Methodist College. The defendant explained that he received failing grades one semester because he "didn't properly withdraw from college" while he was working. He said that he intended to complete his college education and that he paid for his education using money from the "9/11 GI bill" and Pell grants. The defendant said that he served in Iraq during the summer of 2008.

The defendant testified that as a result of his experiences when serving in Iraq, he "felt disconnected from others" when he returned home and found himself easily angered. The defendant claimed to have no real memory of striking the victim. He said that he had not seen the victim or her twin sister since the incident and that he spent "a little over a month" in jail before making bond. The defendant said that after making bond, he became despondent over his circumstances and attempted to take his life by shooting himself with his mother's handgun. He said that the gun "didn't go off, due to a malfunction, because she never cleaned it." The defendant stated that he telephoned his former squad leader and was later hospitalized "[f]or about a week" following the suicide attempt. The defendant said that he continued to see a psychiatrist occasionally but had difficulty keeping appointments because he did not have a driver's license.

The defendant testified that it was his desire to complete his education and obtain full-time employment that would permit him to fulfill his child support obligation for the victim and her sister. He said he also wanted to continue to receive mental health treatment. The defendant stated that he had learned "more than enough" during his one-month stint in jail. The defendant blamed his offenses of driving on a suspended license on his desire to pay his child support obligation, saying, "I had to pay child support, and I was willing to do whatever necessary to make sure that happened." He claimed that he resorted to the use of marijuana because he "became stressed out" about his ability to fulfill his child support obligation.

During cross-examination, the defendant acknowledged that he had not provided Ms. McNair with his address at Upperman Hall. He could not explain the discrepancy involving his telephone number.

Upon questioning by the trial court, the defendant acknowledged that the longest he had worked at any job was "almost three months." The defendant said that he did not "know what else to say" to explain the extent of the victim's injuries.

At the conclusion of the hearing, the defendant asked the trial court to order judicial diversion or impose some form of alternative sentencing.

The trial court observed that the defendant's decision to enter a "best interests"

plea evinced a failure to accept responsibility for the offense, as did his claimed lack of memory. The court also observed that the discrepancy between the defendant's eventual admission that he slapped the victim one time with his open hand did not comport with the injuries the victim received. The court classified the victim's injuries as "severe child abuse" and noted its "difficulty reconciling" the defendant's claimed lack of memory with the severity of the offense. The court gave great weight to the defendant's committing new offenses, particularly an offense involving the possession of drugs, while released on bond. The court observed that the defendant's lying to his probation officer about his telephone number and address as well as his claim of a lack of memory about the offenses showed a general lack of candor. The court commented that the defendant's demeanor during questioning by the police and Department of Children's Services officials manifested a lack of remorse.

The trial court applied enhancement factors 4, that the victim was particularly vulnerable because of her age; 6, that the injuries inflicted upon the victim were great; and 10, that he had no hesitation about committing a crime when the risk to human life was high. *See* T.C.A. § 40-35-114(4), (6), (10) (2006). The court did not apply any mitigating factors. The court denied judicial diversion based on the defendant's lack of candor and remorse, the seriousness of the offense, and the defendant's garnering new criminal convictions while released on bond. The court imposed a sentence of two years and six months to be served in the Department of Correction.

In this appeal, the defendant contends that the trial court erred by imposing a fully-incarcerative sentence without considering the factors provided in Code section 40-35-103. The State contends that the trial court committed no error.

Since the passage of the 1989 Sentencing Act, our standard of review when considering challenges to the length and manner of service of a sentence has been de novo review with a presumption that the determinations of the trial court are correct. T.C.A. § 40-35-401(d) (2006) ("When reviewing sentencing issues raised pursuant to subsection (a), including the granting or denial of probation and the length of sentence, the appellate court shall conduct a de novo review on the record of the issues. The review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct."). In 2005, the general assembly amended the Sentencing Act to bring our sentencing law into compliance with federal constitutional requirements as enunciated in *Blakely v. Washington*, 542 U.S. 296 (2004), and its progeny. Notably, the 2005 revisions rendered advisory the enhancement and mitigating factors and removed the presumptive sentence to be imposed by the trial court. *State v. Carter*, 254 S.W.3d 335, 345-46 (Tenn. 2008). In a number of cases following passage of the 2005 amendments, our supreme court signaled that the statutorily proscribed standard of review, de novo with a presumption of

correctness, might be at odds with what had become a far more discretionary sentencing scheme. *See, e.g.*, *Carter*, 254 S.W.3d at 344, 346. In *State v. Cross*, 362 S.W.3d 512 (Tenn. 2012), the court again wrestled with the "the precise metes and bounds of appellate review under the current increased trial court discretion structure" but ultimately left the issue unsettled. *State v. Cross*, 362 S.W.3d 512, 529 (Tenn. 2012). The court visited the issue most recently in *State v. Bise*, and ultimately concluded that "although the statutory language continues to describe appellate review as de novo with a presumption of correctness," the 2005 revisions to the Sentencing Act "effectively abrogated the de novo standard of appellate review." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). Observing that a change in our standard of review was necessary to comport with the holdings of the United States Supreme Court, our supreme court "adopt[ed] an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Id.* The court held that "sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness'" afforded to sentencing decisions of the trial court. *Id.* at 708.

The supreme court observed, however, that in making its sentencing decision, a trial court must consider the principles of sentencing enumerated in Code section 40-35-210(b):

> (1) The evidence, if any, received at the trial and the sentencing hearing;
>
> (2) The presentence report;
>
> (3) The principles of sentencing and arguments as to sentencing alternatives;
>
> (4) The nature and characteristics of the criminal conduct involved;
>
> (5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
>
> (6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and
>
> (7) Any statement the defendant wishes to make in the

defendant's own behalf about sentencing.

*see Bise*, 380 S.W.3d at 698 n.33(citing T.C.A. § 40-35-210(b)), 706 n.41. By statute, the trial court must also consider "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." *Id.* § 40-35-103(5). The court cautioned that, despite the wide discretion afforded the trial court under the revised Sentencing Act, trial courts are "still required under the 2005 amendments to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Bise* at 706 n.41 (citing T.C.A. § 40-35-210(e)). Thus, under the holding in *Bise*, "[a] sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709.

In *State v. Christine Caudle*, ___ S.W.3d ___, No. M2010-01172-SC-R11-CD (Tenn. Nov. 27, 2012), the supreme court expanded the holding in *Bise* to the trial court's decision regarding alternative sentencing and probation eligibility, ruling "that the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." *State v. Christine Caudle*, ___ S.W.3d ___, No. M2010-01172-SC-R11-CD, slip op. at 7 (Tenn. Nov. 27, 2012). In this case, however, the trial court failed to take into account all relevant factors and principles when imposing the defendant's sentence. Specifically, the trial court did not address the application of Code section 40-35-103, which provides:

> (1) Sentences involving confinement should be based on the following considerations:
>
> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. §40-35-103(1). Because the trial court failed to make the appropriate considerations, our review is purely de novo. *State v. Carter*, 254 S.W.3d 335, 345 (Tenn. 2008) (citing *State v. Shelton*, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992); *State v. Pierce*, 138 S.W.3d 820, 827 (Tenn. 2004)).

In our view, the trial court did not err by denying judicial diversion or probation.

"Judicial diversion" is a reference to the provision in Tennessee Code Annotated section 40-35-313(a) for a trial court's deferring proceedings in a criminal case. *See* T.C.A. § 40-35-313(a)(1)(A). Pursuant to such a deferral, the trial court places the defendant on probation "without entering a judgment of guilty." *Id.* Although the defendant arguably met the requirements to be eligible for judicial diversion, *see id.* § 40-35-313(a)(1)(B)(i)(b), (c), eligibility does not equate to entitlement, *see State v. Bonestel*, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 9 (Tenn. 2000). The statute states that a trial court may grant judicial diversion in appropriate cases. *See* T.C.A. § 40-35-313(a)(1)(A). Thus, the decision to grant or deny judicial diversion lies within the sound discretion of the trial court, *see Bonestel*, 871 S.W.2d at 168, and this court may not revisit the issue if the record contains any substantial evidence supporting the trial court's decision. *State v. Cutshaw*, 967 S.W.2d 332, 344 (Tenn. Crim. App. 1997); *see also Bonestel*, 871 S.W.2d at 168.

Similarly, although the defendant's sentence of ten years or less mandated the trial court's considering probation as a sentencing option, *see* T.C.A. § 40-35-303(a), (b), the defendant bore the burden of establishing his "suitability for full probation." *State v. Mounger*, 7 S.W.3d 70, 78 (Tenn. Crim. App. 1999); *see* T.C.A. § 40-35-303(b). Such a showing required the defendant to demonstrate that full probation would "'subserve the ends of justice and the best interest[s] of both the public and the defendant.'" *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990) (quoting *Hooper v. State*, 297 S. W.2d 78, 81 (1956)), *overruled on other grounds by Hooper*, 29 S.W.3d at 9-10.

Among the factors applicable to the trial court's consideration of both judicial diversion and probation are the circumstances of the offense; the defendant's criminal record, social history, and present condition; the deterrent effect upon the defendant; and the best interests of the defendant and the public. *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978).

Here, the trial court denied judicial diversion largely based upon the defendant's lack of candor and failure to accept responsibility, which are both acceptable grounds for the denial of both judicial diversion and probation. *State v. Souder*, 105 S.W.3d

602, 608 (Tenn. Crim. App. 2002) ("[L]ack of candor militates against the grant of probation."); *State v. Dowdy*, 894 S.W.2d 301, 307 (Tenn. Crim. App. 1994) ("[T]he trial court observed the defendant's statements, attitude and demeanor, and found that she was dishonest and unrepentant. This basis alone is sufficient to give the trial court the benefit of discretion.") (citations omitted).

The imposition of a fully-incarcerative sentence, however, requires consideration of the factors enumerated in Code section 40-35-103(1). The defendant did not have a long history of criminal conduct, making application of Code section 40-35-103(1)(A) inapt. That being said, the circumstances of the offense, namely the defendant's reprehensible act of striking a completely defenseless 11-week-old infant, militate against the imposition of an alternative sentence. *See id.* § 40-35-103(1)(B); *State v. Fields*, 40 S.W.3d 435, 441 (Tenn. 2001); *State v. Cleavor*, 691 S.W.2d 541, 543 (Tenn. 1985); *State v. Hartley*, 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1991). Similarly, the defendant's history demonstrates that his chances of success at abiding by the terms of a sentence involving release in the community are dubious, at best. Although the evidence established the defendant's success while on misdemeanor probation, it also established that he garnered new criminal charges while released on bond. *See id.* § 40-35-103(1)(C).

Following our de novo review, we conclude that a sentence of two and one half years to be served in confinement is appropriate. Accordingly, we affirm the judgment of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE